JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
The defendant-appellant, Chad Michael Carr, appeals from his conviction and sentence for unauthorized use of his friend's truck, a violation of R.C. 2913.03. In his first assignment of error, he asserts that he established the affirmative defense contained in R.C. 2913.03(C)(1) and (2), which is that he had mistakenly but reasonably believed that he had had his friend's permission to borrow the truck. In his second assignment of error, he argues that the trial court failed to apply the correct statutory guidelines when it sentenced him to serve thirty days in jail and one year on probation (with a violation resulting in a jail sentence of 150 days) and to pay restitution and court costs. Neither assignment has merit.
Early Sunday morning on January 17, 2004, at approximately 4:00 a.m., Carr, who was sharing a two-family house with Joseph Leftin, took Leftin's keys that were hanging on a common landing, without first asking Leftin, and drove away in Leftin's 1999 Toyota Tacoma truck. Although Leftin testified that he was awake at that hour, working on his computer, and heard Carr out on the landing, he did not associate anything untoward with the sounds of Carr leaving the house. Leftin awoke the next morning, however, distressed to discover his truck missing. Suspecting his housemate, Leftin made several calls to Carr that were not returned. He then called the police. On Monday, Carr finally called Leftin, apologizing for taking his truck and explaining that he was drunk when he took it. According to Leftin, Carr also told him that the truck might be damaged. But that was not all: Carr could not even say for sure where Leftin's truck was. Carr could only say that he believed Carr's truck was in an impound lot in Butler County, but he could not say what impound lot or precisely where.
A couple of weeks later, Leftin still had not received any information on the whereabouts of his truck. Carr began once again not returning his telephone calls. It was not until, as Leftin described it, "a month to a month and a half" later that Leftin recovered his truck. When he did recover it, Leftin testified that the Tacoma needed "a whole new engine."
Leftin conceded that he had given Carr permission to drive his truck a "couple of times" in the past "just to go get the paper, what have you." Asked whether Carr had had permission to use his truck on the Sunday morning in question, he stated, "No, he did not." He did allow that he had originally dropped the charges against Carr but had refiled them because the two friends could not agree on the amount of damages Carr would pay him. Remarking on his motivation in refiling the charges, Leftin stated, "I mean, yeah, restitution was my primary motivation. It [refiling the criminal charges] was the one card that I had to play."
Testifying in his own defense, Carr stated that he had shared living quarters with Leftin at different locations for approximately three years. He testified that, in those three years, he had borrowed Leftin's truck less than ten times, and that on some of those occasions he had borrowed the truck without asking. He stated that on the Sunday morning in question he had assumed that it was "okay" to take Leftin's truck without asking him. Asked whether he had driven Leftin's truck to Butler County that night, he testified, "I didn't drive." Asked then how the truck had gotten to Butler County, he replied, "I don't recall."
The trial court found Carr guilty without discussion. Later, during sentencing, when Carr continued to insist that he did not recall driving the truck or where it had been left, the trial judge stated, "I don't believe you."
In his first assignment of error, Carr argues that the trial court's rejection of his affirmative defense — that he had had a reasonable belief that Leftin either had authorized him, or would have authorized him, to use his truck — was contrary to the manifest weight of the evidence. He contends that the fact that he had borrowed the truck "numerous times" before, on occasion without notifying Leftin, and that Leftin "had never before objected to the use of the vehicle," conclusively demonstrated the reasonableness of his belief that his use of the truck that morning had been, or would have been, with Leftin's permission. Indeed, he contends that Leftin's use of the criminal system to receive compensation for the damage done to his vehicle was "odious" and "questionably * * * an abuse of process."
Initially, we note that we do not characterize less than ten borrowings in three years as "numerous." Leftin, it must be recalled, described the number of borrowings as more like "a couple" and no more than five (in other words, once, maybe twice during an entire year). Leftin also indicated that the authorization, when it had been given, had been given for a particular purpose, such as buying a paper. There was also no testimony to support Carr's contention that Leftin had "never before objected to [Carr's] use of the vehicle." Rather, Carr testified that Leftin had never laid down a firm rule that he was not to use the truck. In sum, the testimony between these two, while establishing a very limited number of permitted borrowings, fell far short of establishing that Carr had carte blanche to grab Leftin's keys and use the truck whenever he had the urge.
It should also be noted that the issue is not only whether Carr could
have reasonably believed that he had, or would have been given, permission to use the truck, but whether "[a]t the time of the alleged offense" he did, in fact, believe that he either had permission or would have been given permission. See R.C. 2913.03(C)(1) and (2). Leftin testified that Carr told him that he had been drunk when he had taken his keys. Did a drunk Carr actually believe that his friend would entrust him with his truck? The trial court could have rationally concluded that Carr had been aware of his own insobriety, and that the reason he chose not to knock on Leftin's door and ask his permission to take his truck was because he realized that there was no way Leftin would have handed over control of his vehicle to a person in his inebriated state. Furthermore, Carr testified that he had not driven the truck that morning, and, if true, there was no testimony that would support the conclusion that Leftin had ever given Carr permission to take his truck so that others could drive it, or that he would have been willing to do so on that particular morning.
As revealed by its statement during sentencing, the trial court did not find Carr to be credible. As the trier of fact, it was within the court's province to reject his testimony outright. See State v. Martin (1983),20 Ohio App.3d 172, 485 N.E.2d 717. A reviewing court should only reverse on a weight-of-the-evidence challenge in the exceptional case where it is clear that the fact-finder lost its way and that the evidence weighed heavily against a conviction. State v. Thompkins,79 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. This is not such a case.
Finally, we note that Leftin's economic motivation for refiling the criminal charge against Carr did not necessarily negate the evidence of Carr's unauthorized use of his truck. Leftin's motivation may have detracted from his credibility and provided a basis for the trial court to have concluded that he had originally approved of, or had later ratified, Carr's use of the truck. But the trial court was certainly not required to draw such a conclusion. If Carr committed the crime of unauthorized use, as the trial court clearly believed that he had, the fact that the two friends had first sought a private resolution of the matter would not have lessened Carr's culpability.
Finally, Carr challenges his sentence as an abuse of the trial court's discretion under R.C. 2929.22(A). The state argues, and we agree, that the trial court was displeased with, and disbelieving of, Carr's insistence that he could not remember any of the details regarding his use of the truck. This being so, the trial court was allowed to factor into its sentencing decision Carr's evident lack of candor and remorse under R.C. 2929.22(B)(3).
Accordingly, Carr's two assignments of error are overruled, and the judgment of the trial court affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Gorman, P.J., and Sundermann, J., concur. Painter, J., concurs separately.